In the Matter of the Probate of the Will of ROBERT D. KAUF-MANN, Deceased. WALTER A. WEISS, Appellant; JOEL S. KAUFMANN et al., Respondents.

First Department, November 30, 1961.

*Milton Pollack* of counsel (*Irving K. Rubin* with him on the brief; *Milton Pollack* and *Norman W. Schur,* attorneys), for appellant.

*Milton W. Levy* of counsel (*John W. Castles, III,* with him on the brief; *Lord, Day & Lord,* attorneys), for Joel S. Kaufmann and another, respondents.

*Leon Herzfeld,* as special guardian for Richard Kaufmann and another, infants, respondent in person.

*Per Curiam.* This appeal is taken by the executor, and principal beneficiary named in decedent's will which has been denied probate after a jury trial.

The record here indicates a very careful and competent handling by the learned Surrogate of a difficult and lengthy trial, but, in our opinion, based now upon a posttrial consideration of the record as a whole, errors have crept in which were calculated to and which may have had a material influence upon the verdict of the jury.

The Surrogate, over objection, received testimony as to family relationship, property and financial transactions and record and declarations of the testator, so remote in time as to have no bearing upon the issue of undue influence affecting the testamentary act. It is well to bear in mind that undue influence to avoid a will '' must be a present constraint, operating upon the mind of the testator at the time of the testamentary act.'' (*Gardiner* v. *Gardiner,* 34 N. Y. 155, 163.) Also '' [t]he tendencies of juries * * * unless well and firmly guided by the surrogate, are to substitute their own notions of justice on the whole case and to correct what they regard as unfair testamentary dispositions '' (see *Matter of Huber,* 103 Misc. 599, 612, affd. 188 App. Div. 882). Therefore, the trial court is bound to exercise particular care to exclude remote and irrelevant testimony in a will contest case. (See, also, *Matter of Caffrey,* 95 Misc. 466, 468, affd. 174 App. Div. 398, affd. 221 N. Y. 486). Here, in view of the considerable evidence relating to incidents and events remote in time to the testamentary act, we are of the opinion that the Surrogate should have charged as requested that, '' it must be shown that such coercion, duress or domination was exercised over the very testamentary act itself '' (*Matter of Fleischmann,* 176 App. Div. 785, 786; *Matter of Powers,* 176 App. Div. 455; *Matter of Ruef,* 180 App. Div. 203, 205, affd. 223 N. Y. 582; also, *Gardiner* v. *Gardiner, supra*; *Matter of Caffrey, supra,* p. 470; *Matter of Allaway,* 187 App. Div. 87, 88). The Surrogate did not make this point with sufficient clarity in his charge as a whole.

The Surrogate, in his instructions to the jury, made an improper reference and charge with respect to· a relationship of attorney and client between the principal beneficiary Weiss and the decedent. He charged the jury that, if it concluded that the testamentary benefit to Weiss resulted from such a relationship and if it further found that he intervened in the preparation of the propounded paper, '' then a duty of explanation is imposed upon Mr. Weiss to satisfy you that the pro-

pounded paper was the free, untrammeled and intelligent expression of the wishes and intentions of the testator. If such an explanation is called for by the proof and has not been given in the proof to satisfy you, you may find that undue influence has been established.''

It is true as a general proposition that, upon the showing of the existence of the confidential relationship of attorney and client as between the chief beneficiary of a will and the testator, it is incumbent upon the beneficiary to come forward and show that no unfair advantage was taken of his client. It is clear, however, that such rule had no application here. In the first place, there is no evidence in the record to sustain a finding that Weiss acted as the attorney for the decedent in any matter at or around the time of the execution of the will. It is a fact that he was a licensed attorney, but he did not engage in practice as such, and all that the record shows is that he was merely an employee of the testator rather than his attorney. The testator engaged other attorneys for his legal work. Moreover, the alleged will was prepared by and the testamentary act supervised by an independent attorney retained by the testator, and, under such circumstances, it is generally not proper to place the duty of explanation upon an attorney beneficiary. (See *Matter of Guidi,* 259 App. Div. 652, 655, 656, affd. 284 N. Y. 680, and cases cited; also, *Matter of Moskowitz,* 279 App. Div. 660, affd. 303 N. Y. 992.) In any event, the burden of proof with respect to undue influence upon the whole case did not shift but remained upon the contestants. (*Matter of Kindberg,* 207 N. Y. 220, 227, 228; *Matter of Fleischmann,* 176 App. Div. 785, 786, *supra.*) Having knowledge of these settled principles, we think that, upon exception being taken at the close of the charge to the statement therein '' that there was a relationship of attorney and client, or that Walter Weiss was an attorney employed by the testator,'' the Surrogate should have clarified the charge.

Finally, the verdict of the jury is against the weight of the credible evidence, and, in fact, some of us in the majority are of the opinion that upon the authority of *Matter of Walther* (6 N Y 2d 49) there was not sufficient evidence of undue influence to justify the submission of the question to the jury, and that the most that was shown was the existence of lawful influences arising from the claims of a close relationship which were not inconsistent with an assumption that the will expressed the voluntary intent of the testator.

Accordingly, the decree appealed from should be reversed on the law and on the facts, with costs to the appellant payable out of the estate, and a new trial directed upon the issue of alleged undue influence.

McNALLY, J. (dissenting). The decree should be affirmed.

In my opinion the evidence unexplained made permissible an inference in favor of the contestants. It was for the jury to say under all the facts and circumstances whether or not the acts of Weiss were artful and cunning contrivances which so overcame testator's independent volition as to induce him to do what he otherwise would not have done. (*Matter of Anna,* 248 N. Y. 421, 427–428.) In the *Anna* case the Surrogate directed a verdict in favor of the will and the Court of Appeals held that where the unexplained evidence and circumstances bearing on the question of undue influence will permit an inference in favor of contestants the case is one for the jury.

Weiss and decedent lived together for some 10 years prior to the execution of the will dated June 19, 1958, offered for probate; Weiss had authority to sign checks against bank accounts of the decedent; he had unlimited powers of attorney executed by decedent; he had access to decedent's safe-deposit box; he was in charge of the household; he examined all mail in advance of the decedent and assumed to censor it; he was closely and intimately connected with the decedent's social life and in some areas controlled it; he interfered with and restricted decedent's relations with others as evidenced by the episode in Paris involving the witness Mapson, as well as destruction of family mail sent to decedent.

In my opinion it was for the jury to say whether this relation and the activities of Weiss intruded directly upon the planning, preparation and execution of the instrument offered for probate.

In 1950 decedent executed a will containing substantial bequests to members of his family. Thereafter decedent executed five wills in 1951, 1953, 1954, 1955 and 1958. Each succeeding will increased Weiss's share of the estate and the last one bequeaths to him substantially the entire estate. The jury could have found that Weiss induced decedent to sever relations with the attorneys who prepared the 1950 will and introduced decedent to other attorneys; that Weiss was actively and intimately identified with the preparation and formulation of each of the wills subsequent to 1950.

In addition, the jury might well have found that between March and August, 1952, Weiss induced the decedent to remove his insurance policies from Washington, D. C., to New York

City and to place them with insurance brokers recommended by Weiss. During this period Weiss was substituted in place of members of decedent's family with respect to policies on which Weiss collected on decedent's death the sum of $117,290.17. The insurance episode antedated the differences and litigation allegedly stemming from the consolidation of the Kay Jewelry Stores which proponent advances as an explanation for the decedent's extraordinary rejection of his family and friends.

It was within the province of the jury to find that the letter of March 20, 1951, wherein the decedent purports to absolve Weiss from any improper influence, was the typewritten product of Weiss copied by decedent in his own handwriting. The said letter is strongly suggestive of a course of action knowingly at odds with the strong natural ties between decedent and his family and which in the future would require a plausible explanation.

The jury also could have found that Weiss practiced deceit. Weiss after the death of decedent denied knowledge of the existence of prior wills or provision for him therein. The evidence is otherwise.

Weiss's memorandum of February 9, 1951 proposes "Coordination of RDK's (decedent's), Joel's and Aron's wills." Weiss's memorandum to the decedent dated March 11, 1952 specifies matters to be dealt with including "1. Bring your will up to date." Weiss's memorandum to the decedent dated May 28, 1953 states: "6. Wills — Your will should be gone over, since there is at least one point needs changing."

Weiss's memorandum dated March 17, 1954 to Mr. Garrison, decedent's attorney, sets forth the matters concerning the decedent and includes decedent's will. Weiss's memorandum of March 24, 1954 to said attorney specifically suggests a new will. Weiss's memorandum of May 5, 1954 reports the forwarding to Mr. Garrison of decedent's will dated April 8, 1953, an unsigned codicil together with the letter of June 13, 1951.

Weiss's letter of April 23, 1959 to decedent's aunt after decedent's death, enclosing a copy of the June 13, 1951 letter, falsely stated that it was first called to the attention of Weiss after the decedent's death. Weiss's memorandum dated May 5, 1954 shows that the said letter was sent by him with other material to Mr. Garrison. Weiss's deposition before trial acknowledges "he (decedent) may have showed it to me".

The will offered for probate dated June 19, 1958 allegedly was initiated by a letter dated May 20, 1958 addressed to Mr. Garrison and signed "Bob". Underneath the signature is

typed the decedent's name followed by the written initials "eg" which coincide with the initials of the typist. There is no proof that the decedent saw or had knowledge of this letter. Decedent did not sign it. Appellant's argument that the testator and not Weiss initiated the preparation of the will to the extent that it is based on said letter is without substance.

The evidence presented to the jury called for an explanation on the part of Weiss as to the circumstances under which he became substantially the sole beneficiary of the decedent. (*Matter of Anna,* 248 N. Y. 421, *supra.*)

On the issue of undue influence, the brief formal procedures incident to the execution of the will offered for probate are insignificant when arrayed against what might well have been the calculated and persistent course of conduct demonstrated by the record, all of which tended to alienate decedent from his family and friends, overwhelmed decedent's excessively dependent personality, and redounded to the sole financial advantage of the proponent. (*Matter of Anna, supra,* p. 425; *Van Kleeck* v. *Phipps,* 4 Redf. 99, 136–137, affd. 22 Hun 541.)

It may be that the learned Surrogate's charge with reference to the relationship of attorney and client was technically incorrect. There was no prejudice, however, since there was a confidential relation; whether it was attorney and client or some other relation is unimportant. The circumstances in their entirety spell out a confidential relation which gave rise to an obligation on the part of the proponent-beneficiary to offer an explanation. The language of this court in *Matter of Satterlee* (281 App. Div. 251, 254) is appropriate: "Surely, in the light of the unusual setting and the highly fiduciary relationship which proponent had assumed toward decedent, it was incumbent on him to come forward and explain his becoming the principal beneficiary under her will".

Appellant's failure to testify at the trial, in the circumstances established by this record, enabled the jury to make the inferences therefrom most favorable to the contestants. (*Mullen* v. *Quinlan & Co.,* 195 N. Y. 109, 114.)

Appellant's reliance upon *Matter of Walther* (6 N Y 2d 49) is misplaced. There the decedent's sister, the residuary legatee, by reason of her relationship and intimacy with and care of the decedent was the natural object of her bounty. Moreover, in *Walther,* unlike here, the testamentary distribution did not deviate from and conflict with that made in prior wills providing for members of the family and friends of the decedent.

In the circumstances of this case it was well within the discretion of the learned Surrogate to admit evidence of the family

relationship, declarations and transactions of the decedent during the period covered by this record since it tended to establish a course of conduct of long duration with the objective of altering the testamentary disposition of the decedent evidenced by the 1950 will and unduly influencing, undermining and subverting decedent's testamentary capacity to the advantage of the proponent. (See *Matter of Kaufmann,* 11 A D 2d 759.)

VALENTE, STEVENS and EAGER, JJ., concur in *Per Curiam* opinion; McNALLY, J., dissents in opinion in which RABIN, J. P., concurs.

Decree reversed, on the law and on the facts, with costs to the appellant payable out of the estate, and a new trial directed upon the issue of alleged undue influence. Settle order on notice.