**In the Matter of the ESTATE OF George AMBERS, Deceased.**

**AMBERS HEIRS, Appellants and Cross–Appellees,**

v.

**Byron and Gail NELSON, Appellees and Cross–Appellants.**

**Civ. No. 910036.**

Supreme Court of North Dakota.

Nov. 12, 1991.

Cunningham Law Firm, Minot, for appellants and cross-appellees; argued by Kathleen B. Cunningham.

Lee Hagen Law Office, Ltd., Fargo, and LaQua Law Office, Fessenden, for appellees and cross-appellants; argued by Leland F. Hagen. Appearance by Vincent A. LaQua.

ERICKSTAD, Chief Justice.

■ Ambers Heirs[1] (Contestants) have appealed[2] from a county court judgment, entered on a jury verdict, admitting the November 2, 1987, will of George Ambers to probate, appointing Gail Nelson as personal representative of the estate, and ordering that she recover from Contestants her costs and disbursements in the amount of $9,622.57. We affirm.

George Ambers was born in 1907, the fourth of eleven children. A bachelor, he lived with his father until his father died in 1954. He then lived alone until he moved into a Maddock nursing home in 1981. He lived in a Harvey nursing home from 1986 until his death in 1988.

Byron and Gail Nelson began renting George's farmland in 1965. George and the Nelsons developed a close, affectionate relationship. On October 23, 1987, George executed a general power of attorney appointing Gail as his attorney in fact. On November 2, 1987, George executed a will

---

1. The Contestants are heirs at law of George Ambers pursuant to the law of intestate succession, § 30.1–04–03 (2–103), N.D.C.C.

2. While Byron and Gail Nelson filed a notice of cross appeal from the judgment, they did not raise any cross-appeal issues in their brief or argument and we deem the cross appeal to have been abandoned.

leaving his entire estate to Gail and Byron Nelson and appointing Gail as the personal representative of the estate.

In October 1988, Gail filed a petition for formal probate of the 1987 will and her appointment as personal representative of the estate. In November 1988, Contestants filed a petition for adjudication of intestacy, appointment of a special administrator, and objection to the proposed personal representative. Contestants alleged, among other things, that the will George Ambers executed on November 2, 1987, was not valid because its execution was procured by fraud, and at the time it was executed, George was "under the undue influence of Gail Nelson and Byron Nelson", "was not of sound and disposing mind", and was "incapacitated from forming the intent necessary to execute a testamentary document."

On June 9, 1989, a will executed by George in 1955 was discovered. In that will, George left his entire estate "to Lutheran Hospitals and Homes Society of America, Incorporated, [for] ... the use and benefit of the CRIPPLED CHILDRENS' SCHOOL at Jamestown, North Dakota." The 1955 will also provided: "I have deliberately and intentionally not given any devise or bequest to any of the brothers or my sister." Contestants entered into an agreement with Lutheran Health Systems under which Contestants would attempt to defeat the 1987 will and would receive 40 per cent of the estate if successful, with the other 60 per cent going to the Anne Carlson School.[3]

After a jury trial, judgment was entered admitting the 1987 will to probate, appointing Gail the personal representative of the estate, and ordering that she recover from the Contestants her costs and disbursements of $9,622.57. Contestants appealed, raising the following issues:

"1. Whether the trial Court committed reversible error by refusing to instruct the jury on fraud as requested by the

Ambers heirs in their jury instruction 20 through 26.

"2. Whether the trial Court committed reversible error by changing the jury instruction requested by the Ambers heirs on presumption against Power of Attorney and by adding a jury instruction which defined a 'transaction'.

"3. Whether the trial Court committed reversible error by it's ruling which allowed the Nelson's costs as a judgment against the Ambers heirs rather than as costs of the estate as required by N.D.C.C. 30.1–18–20.

"4. Whether the trial Court committed reversible error by refusing to admit a part of the deposition of Sidney Ambers."

1.

"A competent testator may dispose of his property as he wishes without regard to the desires of prospective beneficiaries or the views of juries or courts so long as the terms of the will are not prohibited by law or opposed to public policy." *Stormon v. Weiss*, 65 N.W.2d 475, 505 (N.D.1954). On the other hand, "[w]here a person by fraud, duress, or undue influence induces another to bequeath all his property to him, the court having jurisdiction over the probate of wills can give adequate relief by refusing to admit the will to probate." V *Scott on Trusts* § 489.1 (4th ed. 1989).

Contestants contend that Gail and Byron Nelson engaged in "deception by fraud" and that the trial court erred in refusing to give their requested jury instructions on fraud. In *Krueger v. St. Joseph's Hospital*, 305 N.W.2d 18, 25 (N.D.1981), we set forth a number of principles relevant to this case:

"... fraud can exist without the making of a positive false statement. In addition, the suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. Fraud may arise not only from misrepresentation but from concealment

---

**3.** Presumably, Lutheran Health Systems and the Anne Carlson School are successors of the beneficiaries provided for in the 1955 will.

as well. For concealment to constitute fraud, there must be suppression of facts which one party has a legal or equitable obligation to communicate to another. One who stands in a confidential or fiduciary relationship to another party must disclose material facts and must reveal enough information to prevent misleading the other party." (Citations omitted.)

Several witnesses called by the Contestants testified that they knew of no fraud committed by the Nelsons. Contestants acknowledge that "[i]n this case there is no one fact that stands out as 'this is fraud'." However, the use of inferences from established facts to reach a determination is necessary and common in fraud cases. *Adams v. Little Missouri Minerals Ass'n,* 143 N.W.2d 659 (N.D.1966).

No productive purpose would be served by detailing the evidence relied upon by the Contestants as showing fraud in support of their argument that the trial court erred in refusing to give their requested jury instructions. It is sufficient to summarize it as follows: The Nelsons rented George's land since the 1960's and Gail drafted the leases after 1977; Gail got George to execute a ten-year CRP lease "with George receiving only Fourteen Dollars ($14.00) per acre ... when the total CRP payment was Thirty–Nine Dollars ($39.00) per acre"; Gail did not mention George's need for a nursing home to his relatives; Gail made the contacts regarding nursing homes for George and made the moving arrangements; after George entered a nursing home in 1981, Gail made his bank deposits, received his bank statements, received his mail in her mailbox, stored his personal property, had the keys to his house, and handled his financial affairs; Gail never discussed with George's relatives any animosity that existed between George and his relatives; the Nelsons visited George regularly while he was in the nursing homes; Gail arranged to have George give her a power of attorney and arranged "for the attorney to mention drafting a Will to George"; "[d]uring all of George's conversations with the drafting attorney Gail and/or Byron were present"; and Gail told

no one about the will and "made no attempt to ascertain if George's relatives were in contact with him."

The evidence shows that George thought very highly of the Nelsons and reposed a great deal of trust in them, that the Nelsons provided much helpful assistance to George over a period of many years, and that George and the Nelsons had a close, affectionate relationship. Our attention has not been drawn to any evidence from which a reasonable juror could reasonably draw an inference of fraud. In our view, "the most that was shown was the existence of lawful influences arising from the claims of a close relationship which were not inconsistent with an assumption that the will expressed the voluntary intent of the testator" [*In re Kaufmann's Will,* 14 A.D.2d 411, 221 N.Y.S.2d 601, 605 (1961)], undeceived by any fraud by the Nelsons.

"[A] requested instruction, not applicable to the evidence, should be refused." *Schan v. Howard Sober, Inc.,* 216 N.W.2d 793, 803 (N.D.1974). "A defendant is entitled to an instruction on a valid applicable theory, but only if there is some evidence to support it." *State v. Gann,* 244 N.W.2d 746, 753 (N.D.1976). "[A] trial court may properly refuse to submit an inapplicable or irrelevant instruction to the jury." *State v. Biby,* 366 N.W.2d 460, 465 (N.D.1985). A trial court does not err in refusing to give requested instructions not warranted by the evidence. Because there was no evidence from which the jury could reasonably draw an inference of fraud, we conclude that the trial court did not err in refusing to give the Contestants' requested fraud instructions.

2.

■ Contestants argue that the trial court erred in changing their requested jury instruction on "Presumption Against a Power of Attorney" and by adding an instruction defining "transaction."

Section 59–01–08, N.D.C.C., provides:

"*59–01–08. One assuming relation of personal confidence is trustee.* Everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee within the mean-

ing of this chapter not only as to the person who reposes such confidence, but as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control."

Section 59–01–16, N.D.C.C., provides:

"*59–01–16. Presumption against trustee.* All transactions between a trustee and his beneficiary during the existence of the trust or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration and under undue influence."

We construed the effect of §§ 59–01–08 and 59–01–16, N.D.C.C., in *Estate of Zins v. Zins*, 420 N.W.2d 729, 731 (N.D.1988):

"Thus, if a person assumes a relation of personal confidence he becomes a trustee, and any transaction he enters into with the other person by which he gains an advantage is presumed to be made under undue influence. If a party establishes sufficient facts to give rise to the presumption, the burden then shifts to the other party to prove 'that the nonexistence of the presumed fact is more probable than its existence.' Rule 301, N.D.R.Ev."

Contestants requested an instruction that would have told the jury that (1) "Gail Nelson was a Power of Attorney for George Ambers", which (2) "created a fiduciary relationship", (3) "[t]he Power of Attorney benefits from George Ambers 1987 Will" and (4) "[a]ll transactions between a Power of Attorney and the beneficiary . . . in which the Power of Attorney attains any advantage to her benefit are presumed to be under undue influence." In other words, the Contestants urge that any benefit received by a person with a power of attorney under a beneficiary's will is presumed to have resulted from undue influence. Without more, we decline to apply a presumption of undue influence merely because a person with a power of attorney benefits from the beneficiary's will.

In *Estate of Mehus*, 278 N.W.2d 625, 632 (N.D.1979), this court held that the presumption of undue influence against an agent "arises in cases in which the principal makes a gift as well as in other transactions." In *Mehus*, the presumption was applied to one who had used his position as his mother's attorney-in-fact to purchase joint savings certificates in his and his mother's names. In *Estate of Wagner*, 265 N.W.2d 459 (N.D.1978), this court rejected the contestants' request that it adopt a presumption of undue influence "where the contestant has shown (1) a confidential relationship between the proponent and the testator; (2) participation in the preparation or procurement of the Will of the testator; (3) a substantial bequest or benefit to the proponent by the terms of that Will." *Id.*, at 462.

In *Estate of Polda*, 349 N.W.2d 11, 14 (N.D.1984), will contestants presented evidence raising a suspicion of undue influence:

"The evidence presented by the appellants to support their allegation of undue influence indicates that Chester made arrangements for the attorney to come to the farm; that there were conflicts between Chester and the appellants; that Lucy [the testatrix] was totally dependent on Chester to attend to her personal and business needs; and that the will provided only modest bequests to the four daughters and left nothing to Lucy's son, Ernest. Under the circumstances of this case, we conclude that this evidence at best raises a mere suspicion of undue influence."

We went on to observe, in rejecting a request to apply a presumption of undue influence:

"If we were to adopt the presumption urged by the appellants, it would have the effect in some cases of unfairly burdening the party who takes care of the decedent during the later years in life. In the instant case, the appellants urge that we place the burden upon Chester to prove that he did not unduly influence Lucy in the preparation of her will solely because he was the one who assisted her in business matters and attended to her

personal needs. We decline to adopt a presumption which would, in effect, punish the party who has cared for an elderly parent."

*Id.*, at 15.

We conclude that the mere receipt of benefits under a will by one who has been issued a power of attorney by the testator is an insufficient basis for adopting a presumption of undue influence. Without more, we decline to adopt the presumption sought by the Contestants.

■ The Contestants point to the following evidence in support of their request for a presumption of undue influence (page references to the record omitted):

"In this case the Nelson's could benefit from the gift of George Ambers estate. A gift with a value of more than $241,-000.00. Gail became George Ambers Power of Attorney on October 23, 1987, at that time she took on statutory duty as an agent....

"There are also facts which would allow a jury to find that the Nelson's assumed a relationship of personal confidence under N.D.C.C. 59–01–08. The Nelson's virtually controlled all of George's assets, his mail, his personal belongings, the key to his home and his check book.... In this case the Nelson's even arranged for George's taxes; in 1987 switched tax preparers and in 1985 Byron accompanied George for his return."

The Nelsons state in their brief, without rebuttal, the following circumstances surrounding the drafting of George Ambers' will (page references to the record omitted):

"Ted Seibel, the attorney who drafted the Will for George Ambers, testified about the conversation he had with George at the nursing home when George told him who the beneficiaries of his Will were to be. Mr. Seibel stated he asked George to whom of his relatives he wanted to leave his property. At that point, George started to weep and said, 'They never came to visit me.' He then indicated he wanted to leave the property to Byron and Gail Nelson. The nurses at the Harvey Nursing Home where George spent his last two years were generally unaware he had any family except Byron and Gail."[4]

There is no evidence that the Nelsons used Gail's power of attorney to influence George to name them as beneficiaries in his will; there is no evidence that they took advantage of their close relationship with George to influence his will; and there is no evidence that the Nelsons ever asked to be named in George's will, engaged in any activity designed to influence his will, or participated in the drafting of George's will. There is no evidence of a nexus between the Nelsons' receipt of benefits under George's will and Gail's power of attorney. We conclude that the trial court did not err in refusing to give the Contestants' requested instruction on the presumption of undue influence.

■ Contestants argue that the trial court erred in giving the following instruction defining "transaction":

"A transaction is the act of transacting or conducting any business; negotiation; management; proceeding; something transacted; a business deal or agreement; an action or activity involving two parties or two things mutually affecting or reciprocally influencing one another."

Contestants assert that the error involves the trial court's "definition of transaction as both limited to business and in no way recognizing a gift as a transaction."

While we question whether a wholly unilateral gift or will on the part of a donor or testator, with no participation by one receiving the gift or a devise or bequest constitutes a "transaction" for purposes of

---

4. Counsel for Contestants acknowledged at oral argument that George Ambers' relatives did not visit him as often as the Nelsons did and asserted that a relative would visit George every three to six months. Counsel also observed in Contestants' brief: "By late 1981 when George entered the Maddock Home Nelsons were making a point of visiting regularly and from 1986 to his death in August of 1988 they made at least seventy-four (74) visits to George at the Harvey Nursing Home." (Page references omitted.)

**224**

the presumption of undue influence created by § 59–01–16, N.D.C.C., we need not resolve the issue, as no error, if any, has been preserved for review. After some discussion between the trial court and counsel, the trial court read to counsel its proposed instruction defining a transaction. After the trial court read the proposed instruction, counsel for the Contestants said: "I don't have a problem." Contestants did not object to the instruction and it therefore became the law of the case. *Erickson v. Schwan,* 453 N.W.2d 765 (N.D.1990); *Deichert v. Fitch,* 424 N.W.2d 903 (N.D.1988); *Rau v. Kirschenman,* 208 N.W.2d 1 (N.D.1973).

3.

■ The trial court allowed Gail Nelson to recover costs and disbursements of $9,622.57 from the Contestants. Contestants argue that the trial court erred and contend that the costs and disbursements should have been paid out of the estate, pursuant to § 30.1–18–20, N.D.C.C., which provides:

> "*30.1–18–20(3–720). Expenses in estate litigation.*—If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred."

This court construed § 30.1–18–20, N.D.C.C., in *Estate of Honerud,* 326 N.W.2d 95, 97 (N.D.1982): "We find that it must appear that the personal representative acted in good faith, that his conduct was free from fraud, and that he benefited the estate before attorney fees and costs may be awarded by the court." Contestants' challenge of George Ambers' 1987 will did not benefit the estate and was not intended to benefit the estate. The purpose of the challenge was limited to effecting a change in who received the estate. Furthermore, to rule as the Contestants

urge would diminish the estate and the Nelsons, as the sole beneficiaries of the will, would have to bear the entire expense of upholding the will challenged by the Contestants. "It seems to us that the probate code should not be construed so as to permit one heir or devisee to finance his or her lawsuit against another heir or devisee out of the funds of the estate." *Estate of Kjorvestad,* 375 N.W.2d 160, 171 (N.D.1985), quoting *Estate of Kesting,* 220 Neb. 524, 371 N.W.2d 107, 109 (1985). Nor should a devisee be forced to bear the expense of upholding a will challenged by an heir or another devisee in a proceeding that was not intended to benefit the estate. We conclude that the trial court did not err in allowing Gail Nelson, the proponent of George Ambers' 1987 will appointing her as personal representative of the estate, to recover her costs and disbursements from the Contestants who caused her to incur the expenses.

4.

■ Contestants allege that the trial court erred in refusing to admit into evidence part of a deposition of Sidney Ambers. The Nelsons offered the deposition of Sidney Ambers, but sought to have three parts excluded. The trial court agreed to exclude two parts but would not allow the third part to be excluded. The Nelsons withdrew the offer of the deposition and it was never received into evidence. Because neither the Nelsons nor the Contestants thereafter offered the deposition, no issue on this matter has been preserved for review.

Affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.