[667 NYS2d 177]

In the Matter of the Estate of THEODORE PANEK, Deceased. PA-
TRICIA McNABB et al., Appellants-Respondents; WILLIAM J.
BOONZHA, Deceased, et al., Respondents-Appellants.

Fourth Department, December 31, 1997

## APPEARANCES OF COUNSEL

*Walter C. Foulke,* Auburn, for appellants-respondents.

*John P. Doyle,* Auburn *(James Hoare* of counsel), for respondents-appellants.

## OPINION OF THE COURT

DENMAN, P. J.

Theodore (Ted) Panek died on May 3, 1994, following a long illness, survived by four siblings, including the proponent, and by many nieces and nephews, including the eight objectants, who are the children of predeceased siblings. Ted's will, which was executed on March 18, 1994, leaves one half of Ted's estate to proponent, who is also named as executrix, and divides the other half among the three other surviving siblings.

Objectants challenge the validity of the will on the grounds that it lacks due execution, that decedent lacked testamentary capacity, and that he was subject to undue influence. Those three objections were the subject of a jury trial in Surrogate's Court. The Surrogate directed a verdict in favor of proponent on the issue of due execution. The other two objections were submitted to the jury, which found that the testator was of sound mind and memory at the time he executed the will, but that he was the victim of undue influence by proponent while living the last months of his life in proponent's home. Based on that verdict, the Surrogate issued a decree denying probate of the will, vacating letters testamentary previously granted to proponent, denying proponent commissions or other compensation, and directing that proponent file an accounting with respect to her estate dealings. Insofar as relevant to our determination, proponent and two other legatees appeal from that decree, contending that there was insufficient evidence of undue influence to warrant submission of that issue to the jury, let alone to support its verdict.

Before admitting a will to probate, Surrogate's Court must be satisfied that, at the time the testator executed the will, he was free from any restraint, including undue influence (*see, Matter of Kaufmann,* 14 AD2d 411, 412, citing *Gardiner v Gardiner,* 34 NY 155, 163; *see generally,* SCPA 1408 [2]). The

burden of proving that the testator made the will as a result of undue influence rests upon objectants (*see, Matter of Anna*, 248 NY 421, 427; *Matter of Kaufmann, supra*, at 413), who must prove it by a fair preponderance of the evidence (*see, Matter of Collins*, 124 AD2d 48, 53; *Matter of Schmitz*, 104 AD2d 1039).

" 'It must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist. It must not be the promptings of affection; the desire of gratifying the wishes of another; the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent resistless power which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear' " (*Matter of Walther*, 6 NY2d 49, 53-54, quoting *Children's Aid Socy. v Loveridge*, 70 NY 387, 394).

"Undue influence is seldom practiced openly, but it is, rather, the product of persistent and subtle suggestion imposed upon a weaker mind and calculated, by the exploitation of a relationship of trust and confidence, to overwhelm the victim's will to the point where it becomes the willing tool to be manipulated for the benefit of another" (*Matter of Burke*, 82 AD2d 260, 269; *see also, Matter of Collins, supra*, at 53). Thus, undue influence most often is not the subject of direct proof, but rather is shown by circumstantial evidence (*see, Matter of Collins, supra*, at 53-54, citing *Matter of Walther, supra*, at 54). Undue influence "can be shown by all the facts and circumstances surrounding the testator, the nature of the will, his family relations, the condition of his health and mind, his dependency upon and subjection to the control of the person supposed to have wielded the influences, the opportunity and disposition of the person to wield it, and the acts and declarations of such person" (*Rollwagen v Rollwagen*, 63 NY 504, 519; *see, Matter of Anna, supra*, at 424; *Matter of Collins, supra*, at 54).

Considering all the facts and circumstances, we conclude that there was ample evidence from which the jury could infer that proponent exercised undue influence over the testator, ultimately forcing her will upon him in the matter of whether he should make a will and how his property should be distributed. Although proponent denied any corrupt motive, the estate's value of $235,000 alone establishes a financial mo-

tive (*cf., Matter of Collins, supra,* at 55). Moreover, under the will, proponent received one half of the estate and additionally was named as executrix, whereas her intestate share would have been only one seventh.

The record suggests that it was unnatural for Ted to favor proponent over his other siblings, especially Michael, Ted's business partner. There was much evidence that, for most of their lives, proponent was not close to Ted and that, following an earlier dispute over their father's estate, Ted and proponent had nothing to do with one another for years.

The record establishes that Ted had no prior will and, until March 17, 1994, resisted all urging by various relatives and hospice and social workers to make a will, although he had been sick since 1990 and terminally ill for almost a year. Further, on several occasions prior to March 17, 1994, hospice workers recorded in their notes that Ted consistently refused to make a will when advised to and exhibited anxiety when the subject was brought up.

It was shown that Ted was confined to bed throughout the period in question, was on various pain medications, suffered from sleeplessness, was in a "confused" and "weak and shaky" state, and had difficulty communicating clearly. Unquestionably, the fragile physical and mental state of Ted left him vulnerable to the exercise of undue influence by proponent, who controlled the number and frequency of Ted's visitors and who would stand in the doorway of his room when Ted had visitors. Further, there was evidence that, near the end of Ted's life, proponent forbade family members to enter the house and would not let Ted take their calls. Proponent monitored and regulated Ted's pain medication, spoke on Ted's behalf with health care workers, made many health care decisions for Ted, and controlled his bank books and other financial records.

The record paints proponent as domineering and overbearing, manipulative, prone to lying, and greedy. In addition to actively insulating Ted from relatives who asked to see or speak to him, proponent threatened to put Ted in a nursing home if he did not "agree" not to see those relatives. There was evidence that Ted feared being placed in a nursing home, and thus it can be inferred that proponent intended to coerce him and in fact coerced him by employing such threats. Moreover, although proponent testified that she did not care whether Ted had a will and never discussed the subject with him, the record establishes that her testimony on that point

was completely incredible. The medical records and witnesses reveal that proponent was the driving force behind Ted's making a will, that she hounded Ted continually on the subject, that she importuned the health care workers to influence him, and that she repeatedly expressed anxiety over Ted's refusal to make a will. The record further establishes that the attorney who drafted the will was proponent's long-time family attorney and had no prior dealings with Ted.

The inference of undue influence is further supported by proponent's handling of Ted's checking account and power of attorney, and also by falsehoods contained in proponent's first verified petition for probate.

In view of our analysis, it is unnecessary to reach the contentions of objectants.

Accordingly, the decree of Surrogate's Court must be affirmed.

GREEN, CALLAHAN, BALIO and FALLON, JJ., concur.

Decree unanimously affirmed, with costs.