■ In the Matter of the Estate of SAM SEELIG, Deceased. EDWIN FIELD et al., as Executors of SAM SEELIG, Respondents; CGH FOUNDATION, INC., et al., Respondents, and ROSE AND SAM SEELIG CHARITABLE TRUST, Appellant. [756 NYS2d 305] —Peters, J. Appeals (1) from an order of the Surrogate's Court of Sullivan County (Ledina, S.), entered December 3, 2001, which, inter alia, upon reconsideration, adhered to its prior order granting petitioners' motion for partial summary judgment dismissing the first objection challenging due execution, and (2) from an order of said court, entered March 8, 2002, which found certain documents protected by the attorney-client privilege.

In 1992, decedent and his wife made an irrevocable pledge to respondent CGH Foundation, Inc. (hereinafter CGH) for it to receive, upon their death, their residual estates which were valued at approximately $2,000,000 upon the condition that a portion of respondent Community General Hospital of Sullivan County (hereinafter the hospital) be named after them. Codicils reflecting this pledge were prepared by their attorney, Jack Ingber, and the gift was maintained in subsequent codicils and wills. Specific bequests to both religious and charitable groups were also included in such codicils and wills until 1997, when decedent executed a will that made certain bequests to charitable groups, but created a foundation for the residuary estate.

In October 1998, Ingber prepared documents creating respondent Rose and Sam Seelig Charitable Trust (hereinafter the trust) which designated himself, David Jaffe and decedent as its trustees; no specific charities were detailed, leaving the trustees, upon decedent's death, unfettered discretion to distribute its funds. In November 1998, Ingber drafted a new will which made specific bequests to charities which did not include CGH, but left the residuary estate to the trust. Both such documents were executed by decedent. However, by December 1998, it is alleged that decedent was so distressed over the implications of this trust and will that with the assistance of his friend, petitioner Selma Field, who was an employee at the hospital, attorney Stephen Oppenheim was contacted.

Decedent allegedly told Oppenheim that he was unhappy with both the November 1998 will and Ingber and, therefore, desired that Oppenheim implement the specific bequests that he listed on a separate piece of paper by preparing a new will. This will, executed on December 31, 1998, left the residuary estate to the hospital and CGH (hereinafter collectively referred to as Community General), effectively replacing the trust.

Approximately one year later, decedent died. The trust objected to the probate of the December 1998 will by contending that decedent lacked testamentary capacity, that the will was executed improperly and that it was obtained by fraud and undue influence.* Petitioners, the executors of the December 1998 will, successfully moved for partial summary judgment on the issue of due execution. Although Surrogate's Court thereafter granted a motion for renewal which sought to revisit the issue, as well as add an objection based on mistake, the court again granted summary judgment and denied the motion to amend. The trust now appeals from this order, entered December 3, 2001.

During the pendency of the litigation, discovery practice included a demand by the trust for the production of documents from Community General and others. During a later deposition of Field, it was revealed that she had several boxes of documents that pertained to decedent, his wife and issues concerning their pledge to the hospital. In response to an informal request made during her deposition, Community General produced most of these materials; as to others, it claimed privilege and ultimately created a privilege log supporting its denial. Surrogate's Court reviewed the documents in camera and, by order entered March 8, 2002, found most of them protected by the attorney-client privilege. The trust also appeals from that order.

First, addressing the award of summary judgment on the issue of due execution, we find it entirely proper, even in a contested probate proceeding, where, as here, a "proponent makes out a prima facie case for probate and objectants fail to raise a material issue of fact" (*Matter of Coniglio*, 242 AD2d 901, 901-902; *see Matter of Pollock*, 64 NY2d 1156, 1158; *see also* SCPA 102). Oppenheim's presence during the signing ceremony, coupled with the testimony of the two remaining witnesses, even if faulty or imperfect, constitutes, in our view, prima facie evidence of due execution (*see Matter of Collins*, 60 NY2d 466, 470-471). With the burden shifted to the trust to demonstrate a triable issue of fact (*see Zuckerman v City of New York*, 49 NY2d 557, 560), it contends that due to the expedited manner in which the will was drafted, along with a discrepancy in Oppenheim's recollection of meetings prior to its execution, decedent did not know the contents of the will that he signed. Upon this bare showing, we find the theory wholly unsupported and speculative, especially since decedent was not

* The trust subsequently withdrew its objection based on testamentary capacity, and summary judgment on such issue was granted.

illiterate or otherwise handicapped (*see Matter of Regan*, 206 App Div 403, 407) and there exists a presumption that a testator will know the contents of a duly executed will (*see Matter of Gannon*, 73 Misc 325, 334-335).

As to the further contention that Surrogate's Court made improper findings of fact beyond those necessary to address the issue of due execution, we note that such findings would not be preclusive under the law of the case doctrine (*see Lavelle v Urbach, Kahn & Werlin*, 198 AD2d 751, 752). Surrogate's Court made it clear that it was solely addressing the mandates of EPTL 3-2.1; it preserved issues concerning allegations of fraud and undue influence. Having reviewed and rejected all remaining contentions regarding the partial award, we find no viable challenge (*see Matter of O'Brien*, 182 AD2d 1135, 1135).

Next addressing the denial of the trust's motion for leave to amend its objections, we recognize that although leave should be " 'freely given' " (*A. Servidone, Inc. v Bridge Tech.*, 280 AD2d 827, 829, *lv denied* 96 NY2d 712, quoting *Danise v Agway Energy Prods.*, 255 AD2d 731, 732), if the amendment is meritorious and does not cause prejudice or surprise to the nonmoving party, the determination is a discretionary matter which will not be disturbed absent abuse (*see Thibeault v Palma*, 266 AD2d 616, 617). Asserting that decedent did not properly review the December 31, 1998 will before its execution and, therefore, could not have known its contents, the trust reasons that such will could not reflect decedent's testamentary intention and thus should be set aside on the ground of mistake. We disagree. The record includes not only a signed handwritten list authored by decedent which indicates specific bequests to be included in the will—bequests specifically followed in the executed will—but also notes authored by Oppenheim concerning the meeting he had with decedent before he drafted the will. With decedent's later letters expressing satisfaction with Oppenheim's services, we agree with Surrogate's Court's assessment that there can be no contention that decedent was laboring under a mistake of fact. This determination does not exclude the effect that undue influence may have had on this will (*see Matter of Young*, 289 AD2d 725, 727), an objection made by the trust which awaits a factual hearing.

As to the claim of privilege, it is settled that confidential communications made between an attorney and a client during the course of a professional relationship are privileged and will not be disclosed without the permission of the client (*see* CPLR 4503 [a]). Yet, "[o]nly those disclosures 'necessary to obtain

informed legal advice' [will] fall within the scope of [this] privilege" (*Matter of Vanderbilt [Rosner—Hickey]*, 57 NY2d 66, 76, quoting *Fisher v United States*, 425 US 391, 403).

In this context, we address the first claim alleging a waiver of privilege because Community General failed to serve a proper privilege log pursuant to CPLR 3122. Although it contends that it was not required to serve a privilege log since Field's documents were not produced in response to a formal request made pursuant to CPLR 3120 or 3121 or by order under CPLR 3124, we acknowledge that when a party objects to a disclosure of requested documents, it must detail both the legal basis for withholding such documents along with their distinguishing features (*see* CPLR 3122 [b]), unless such information would cause the disclosure of the privileged information. With Field an employee of the hospital, we find the revised privilege log to be in compliance with CPLR 3122 (b) (*see Pyron v Banque Francaise du Commerce Exterieur*, 256 AD2d 204, 205). While it does not always list a specific legal basis for an objection, the objections are clearly discernable based upon either relevancy or privilege.

The next contention relates to the mandates of CPLR 4503 (b), which provide that in an action such as this, "an attorney or his employee shall be required to disclose information as to the preparation, execution or revocation of any will or other relevant instrument." Thus, the trust contends that Community General should be required to turn over Field's documents which involve the preparation of decedent's earlier wills and/or instruments associated with those wills. We disagree. The aforementioned rule only applies to "confidential communications [made] with the testator" (9 Weinstein-Korn-Miller, NY Civ Prac ¶ 4503.28) and not communications between Community General's counsel and itself regarding provisions or documents addressing the naming of a portion of the hospital after decedent and his wife. With the requested documents being of that nature, Surrogate's Court properly denied disclosure.

Moreover, while we agree that an invasion of the privilege may be necessary to determine the validity of a claim or defense alleging undue influence (*see New York TRW Tit. Ins. v Wade's Canadian Inn & Cocktail Lounge*, 225 AD2d 863, 864), we fail to conclude, upon our review of the privileged documents, that they contain any such vital information. Nor do we find that there was a voluntary disclosure of privileged communications on certain subjects which served to waive the privilege on all other communications regarding that subject

(*see id.* at 864; *Village Bd. of Vil. of Pleasantville v Rattner*, 130 AD2d 654, 655), or that the privilege was being asserted as a cover for Community General's wrongdoing (*see Tierney v Flower*, 32 AD2d 392, 395-396).

As to the contention that the documents were generated only for business purposes and therefore no privilege should apply, the Court of Appeals has cautioned that "[s]o long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters" (*Rossi v Blue Cross & Blue Shield of Greater N.Y.*, 73 NY2d 588, 594). Finding the relevant documents to either be " 'made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose' [or] for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship" (*id.* at 593, quoting *Matter of Grand Jury Subpoena [Bekins Record Stor. Co.]*, 62 NY2d 324, 329), they were appropriately protected (*cf. Matter of Charles v Abrams*, 199 AD2d 652, 652-653).

We do, however, agree with the trust's contentions that certain drafts of legal documents prepared by counsel for Community General, but ultimately for decedent's or his wife's review and signature, are not entitled to protection since they appear to have already been disclosed to Ingber or have been reproduced in this record (*see Matter of Vanderbilt [Rosner—Hickey]*, 57 NY2d 66, 74, *supra*). As Community General has not sustained its " 'burden of establishing that [all of] the information sought is immune from disclosure' " (*Marten v Eden Park Health Servs.*, 250 AD2d 44, 46-47, quoting *Bloss v Ford Motor Co.*, 126 AD2d 804, 805), we must deny the protection of privilege to the following documents only: the 1984 agreement, the June 1985 agreement, the May 17, 1989 fax enclosing a draft of the May 18, 1989 letter agreement, the fax dated February 18, 1993 and the April agreement without markings.

Cardona, P.J., Crew III, Carpinello and Rose, JJ., concur. Ordered that the order entered December 3, 2001 is affirmed, without costs. Ordered that the order entered March 8, 2002, is modified, on the law, without costs, by compelling respondents CGH Foundation, Inc. and Community General Hospital of Sullivan County to disclose those documents identified in this Court's decision; and, as so modified, affirmed.

