■ In the Matter of the Estate of MARIA LUISA DE HEREDIA RYAN, Deceased. INÉZ RYAN MAISANNES, Appellant-Respondent; JUAN J. RYAN, ESQ., Respondent-Appellant, et al., Respondents. [824 NYS2d 20]—

Order, Surrogate's Court, New York County (Renee R. Roth, S.), entered March 1, 2005, which, insofar as appealed from as limited by the briefs, denied that branch of petitioner-appellant's motion for summary judgment dismissing the third objection to probate of the will premised, inter alia, on fraud and undue influence, and further denied objectant-respondent-appellant's cross motion for summary judgment denying probate based on the objection and on violation of public policy, modified, on the law, the objections to probate based on fraud, undue influence and violation of public policy dismissed, and otherwise affirmed, without costs, and the matter remanded for further probate proceedings consistent herewith.

Decedent died on February 26, 1995, at the age of 92, leaving an estate valued at approximately $450,000. In her last will, dated June 24, 1992, decedent specifically disinherited three of her children, Juan, Ricardo and Catalina, the objectants to the will, leaving the bulk of her estate equally to four of her five remaining children and the wife of her eldest son, Tomas. As explained in the propounded will, objectants were disinherited, albeit regretfully, because, over decedent's objection, they had refused to call off a proceeding they had initiated in California to remove Tomas and his wife, Viviane, as cofiduciaries of the estate of decedent's brother-in-law.* The propounded will stated that objectants knew "from the beginning that [decedent] disapproved of what they were doing" and were warned on numer-

---

* On September 9, 1991, the California court removed Tomas and Viviane and appointed Juan in their place, surcharging them $120,000 for, inter alia,

ous occasions that they would be disinherited unless they called off the lawsuit against Tomas. Attached to the will was a handwritten statement, signed and dated by decedent on June 24, 1992, which reiterated her reason for disinheriting Juan, Catalina and Ricardo.

In November 1995, the disinherited children filed objections to the probate of the will, which alleged, inter alia, that the will was obtained by fraud and undue influence and violated public policy. Party depositions were taken and in August 1999, petitioner, a daughter of decedent and the preliminary executrix, moved for summary judgment dismissing the objections. Objectants, in turn, cross-moved for summary judgment denying probate. As pertinent to this appeal, the Surrogate denied summary judgment on the third objection, finding sufficient factual dispute as to whether the propounded instrument was procured by undue influence. We disagree. Although summary judgment in a contested probate proceeding must be exercised cautiously, it is appropriate where, as here, the petitioner establishes a prima facie case for probate and the moving objectant's evidence does not raise a genuine triable issue of fact as to undue influence (*Matter of Minervini*, 297 AD2d 423, 424 [2002]; *see also Matter of Wilson*, 266 AD2d 164 [1999]; *Matter of Tully*, 227 AD2d 288 [1996]).

"To be 'undue,' the influence exerted must amount to mental coercion that led the testator to carry out the wishes of another, instead of [her] own wishes, because the testator was unable to refuse or too weak to resist" (PJI 7:55; *see also Matter of Burke*, 82 AD2d 260, 269 [1981]). In order to justify a submission of undue influence to the jury, objectant must make a showing of motive and opportunity to exert undue influence as well as that such influence was actually utilized (*Matter of Walther*, 6 NY2d 49, 55 [1959]; *see also Matter of Bustanoby*, 262 AD2d 407, 408 [1999]). Circumstantial evidence, demonstrated, inter alia, "by all the facts and circumstances surrounding the testator, the nature of the will, [her] family relations, the condition of [her] health and mind, [her] dependency upon and subjection to the control of the person supposed to have wielded the influences, the opportunity and disposition of the person to wield it, and the acts and declarations of such person" (*Matter of Camac*, 300 AD2d 11, 12 [2002] [internal quotation marks omitted]), may be used to prove undue influence; however, this evidence must be of a substantial nature (*Walther*, 6 NY2d at 54).

Objectant's claim that decedent's relationship with Tomas,

overpaying commissions to themselves and overcompensating Tomas as counsel.

which allegedly consisted of her always being willing to take his side in all disputes, unduly influenced her to disinherit three children to appease Tomas is insufficient to support a finding of undue influence. While the evidence may be consistent with objectant's hypothesis that decedent's act of disinheriting objectants was based upon a misbelief, instigated by Tomas, that objectants had wronged Tomas in the California lawsuit, the evidence is equally consistent with the assumption that decedent cared not about whether objectants' suit had any merit but that three of her children had rejected her plea to cease their public airing of their family laundry. As such, " '[a]n inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference' " (*Walther*, 6 NY2d at 54, quoting *Matter of Ruef*, 180 App Div 203, 204 [1917], *affd* 223 NY 582 [1918]).

Additionally, "[g]ratitude, love, esteem or friendship which induces another to make testamentary dispositions of property cannot ordinarily be considered as arising from undue influence, and all these motives are allowed to have full scope, without in any way affecting the validity of the act" (*Children's Aid Socy. of City of N.Y. v Loveridge*, 70 NY 387, 394-395 [1877]; *see also Burke*, 82 AD2d at 269). Here, decedent had a very close relationship with Tomas, her firstborn, that predated the execution of any of the eight wills she executed. As reflected by numerous letters written by decedent to various of her children both before and after the execution of the propounded will, objectants' lawsuit against Tomas was "killing" her. She could not sleep and felt the need to seek advice from her priest. When her pleas to objectants were ignored, decedent concluded that she had no other alternative but to disinherit them. According to decedent's January 1, 1993 letter to petitioner, to ignore what objectants tried to do to Tomas would be "more or less giving [her] silent approval," which she could not do.

Nor is there any evidence that Tomas actually compelled decedent to do something she did not want to do. Such influence is not demonstrated by the mere fact that the will favored Tomas over objectants (*see Matter of Fiumara*, 47 NY2d 845, 846 [1979]). "[U]ndue influence to avoid a will must be a *present* constraint, operating upon the mind of the testator at the time of the testamentary act" (*Matter of Kaufmann*, 14 AD2d 411, 412 [1961] [emphasis added and internal quotation marks omitted]). Here, given Tomas's testimony that he was not even aware of the existence of the fourth and fifth wills, let alone the propounded will, and evidence showing that at the time the propounded will was executed, decedent was living with her

daughter in Mexico while Tomas resided in New York, objectant is entitled to no inference of undue influence in the absence of evidence demonstrating Tomas's direct involvement in the preparation or execution of the will (*see Matter of Bartel*, 214 AD2d 476, 477 [1995]).

Additional factors that suggest a lack of undue influence are decedent's physical and mental condition (*cf. Matter of Callahan*, 155 AD2d 454 [1989]), which are not in dispute, and the fact that the propounded instrument did not materially deviate from decedent's prior testamentary pattern (*cf. Matter of Kruszelnicki*, 23 AD2d 622 [1965]).

As this Court observed recently, the evidence must permit an inference that "the decedent was so dependent upon and subject to [the alleged influencer's] control that she could not resist the wielding of his influence" (*Matter of Korn*, 25 AD3d 379, 380 [2006]). This is a very heavy burden of proof, which objectant does not meet. The mere fact that the attorney who drafted the propounded will was a close friend of Tomas is, on these facts, insufficient to show a triable issue of fact on undue influence.

To state a claim for fraud, objectant was required to demonstrate that Tomas "knowingly made a false statement to the testator which caused [her] to execute a will that disposed of [her] property in a manner differently than [s]he would have in the absence of that statement" (*Matter of Evanchuk*, 145 AD2d 559, 560 [1988]). Here, objectant submitted only conclusory and speculative evidence that Tomas made such a false statement, and as such, he failed to raise a triable issue of fact regarding the fraud claim (*Matter of Clapper*, 279 AD2d 730, 732 [2001]; *Bustanoby*, 262 AD2d at 408).

The claim that the propounded will violates public policy is likewise unpersuasive. Concur—Tom, J.P., Friedman, Marlow and Malone, JJ.

Mazzarelli, J., dissents in a memorandum as follows: I would affirm the order entered March 1, 2005, which found a factual issue as to whether the propounded instrument was procured by fraud, for the reasons stated by Surrogate Roth.