Decree,[1] Surrogate’s Court, New York County (Kristin Booth Glen, S.), entered on or about June 23, 2008, which, inter alia, admitted the document dated September 12, 1958 to probate as the last will and testament of Seymour Halpern, also known as Seymour Lionel Halpern, affirmed, without costs.
*430 The decedent, Seymour Halpern, a physician, married his first wife Anafred in 1953. On September 12, 1958, he purportedly executed a document that petitioners, his daughters, seek to probate as his will. Anafred died in 1981, and in 1988, the decedent married his second wife Elizabeth (the objectant). On June 7, 2006, Seymour died, leaving an estate valued at approximately $28 million. At the time of his death, his family believed he died intestate, but two months after her husband’s death, Elizabeth found an almost 50-year-old four-page document in their home. The decedent’s children now seek to have that document probated as his will.
Three witnesses signed the will. Harry Grayer, Esq., Barbara Sammons, and Mary Ann Schuder. Grayer was the decedent’s attorney. There is an invoice from Grayer in the record, dated September 12, 1958, the day the will was executed, charging Seymour for “professional services rendered” “Re: Preparation of Will, etc.” The two other witnesses, Sammons and Schuder, worked in the decedent’s medical office at the time the will was signed. All three of the witnesses’ signatures appear at the end of the will, underneath an attestation clause, which recites: “The above instrument was on the 12th day of September, 1958 in the Borough of Manhattan, County, City and State of New York, subscribed by SEYMOUR LIONEL HALPERN, the Testator above named in the presence of us and of each of us, and at the same time and place, the above instrument was published and declared by the said Testator to be his Last Will and Testament and thereupon each of us at the request of the said Testator and in his presence and in the presence of each other have hereunto signed our names as witnesses thereto, and wrote the places of our respective residences alongside our names.” The will made a number of minor bequests to relatives and charitable organizations. With the exception of those bequests, Anafred and Adrienne, Seymour’s eldest daughter, and his only child born before 1958, were the sole beneficiaries under the will, with a provision made for any after-born children. Seymour and Anafred subsequently had a second daughter and a son, Vivienne and Ronald.
In the fall of 2006, Adrienne and Vivienne (the proponents) submitted a petition for admission of the will to probate. On June 29, 2007, Ms. Sammons, the only surviving attesting witness, was deposed. The deposition lasted 45 minutes. Ms. Sammons, who was 69 years old, testified that she recognized her signature at the end of the will and that she remembered living *431 at the address listed next to her signature in 1958. However, she also testified, more than 15 times, in response to a variety of questions, that she had no memory of the events of September 12, 1958, because they occurred 50 years before the deposition. Handwriting experts authenticated decedent’s signature at the end of the will, as well as that of his attorney, Mr. Grayer.
On July 17, 2007, Elizabeth filed objections to probate, asserting that the will was not duly executed. The proponents moved for summary judgment to admit the will to probate, and the objectant cross-moved for summary judgment as well. The court held a hearing and concluded that there was no material issue of fact as to the due execution of the will. The objectant appeals from the decree admitting the will to probate.
Before admitting a will to probate, Surrogate’s Court must be satisfied that the execution of the will was valid (see SCPA 1408; Matter of Pirozzi, 238 AD2d 833, 834 [1997]). The proponent has the burden of demonstrating, by a preponderance of the evidence, that a purported will was duly executed (id.; Matter of Falk, 47 AD3d 21, 25 [2007], lv denied 10 NY3d 702 [2008]). If an attorney-drafter supervises the execution of a will, there is a presumption of regularity that the will was properly executed (see Matter of Moskoff, 41 AD3d 481, 482 [2007]; Matter of Tuccio, 38 AD3d 791, 791 [2007], lv denied 9 NY3d 802 [2007]; Matter of James, 17 AD3d 366, 367 [2005]; Matter of Seelig, 302 AD2d 721, 722 [2003]). In addition, a valid attestation clause raises a presumption of a will’s validity, although it is nonetheless incumbent upon Surrogate’s Court to examine all of the circumstances surrounding the execution of the document in order to ascertain its validity (see Falk, 47 AD3d at 26, citing, inter alia, Matter of Collins, 60 NY2d 466, 471 [1983]). The determination whether to dismiss objections and admit a will to probate is within the discretion of Surrogate’s Court, and its determination will not be overturned absent a showing of an abuse thereof (Matter of Colverd, 52 AD3d 971, 972 [2008]).
In 1958, when the instant will was purportedly executed, Decedent Estate Law § 21 governed. That section provided:
“Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:
“1. It shall be subscribed by the testator at the end of the will.
“2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses.
*432 “3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament.
“4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.”
Here, Dr. Halpern signed the will at the end of the document (Decedent Estate Law § 21 [1]). An attestation clause states that he did so in the presence of three attesting witnesses (Decedent Estate Law § 21 [2]). This clause also states that Dr. Halpern declared the document to be his last will and testament (Decedent Estate Law § 21 [3]). Mr. Grayer, the decedent’s lawyer, prepared the will, served as an attesting witness, and billed the decedent, on the date of the execution of the instrument, for services rendered with respect to its “Preparation . . . etc.” (see Seelig, 302 AD2d at 722 [attorney’s presence at signing of will constituted prima facie evidence of will’s due execution]). The cover page of the will also contained Mr. Grayer’s letterhead. Ms. Sammons identified her signature and address on the document, and a handwriting expert verified the signatures of the decedent and Mr. Grayer (Decedent Estate Law § 21 [4]).
Thus, Surrogate’s Court correctly concluded that the proponents demonstrated a prima facie showing of due execution of the will, as it contained a valid attestation clause (see Matter of Collins, 60 NY2d 466, 471 [1983]; Falk, 47 AD3d at 26), and was executed under an attorney’s supervision (Matter of Leach, 3 AD3d 763, 764 [2004]; Matter of Seelig, supra), despite the fact that the sole surviving witness, Ms. Sammons, testified that she did not remember the will’s execution (see Collins, 60 NY2d at 470-472; Matter of Korn, 25 AD3d 379, 379 [2006]; Matter of James, 17 AD3d 366, 367 [2005]).
Upon the presumption of due execution, the burden then shifted to the objectant to produce evidentiary proof in admissible form to rebut the presumption and raise a material issue of fact (Seelig, 302 AD2d at 722).
It is the dissent’s position that a trier of fact could reasonably infer, from the sole surviving witness’s deposition testimony, that the formalities set forth in the attestation clause had never taken place. However, the excerpts from her EBT relied on by the dissent, read in context, can also be interpreted as testifying that she could not confirm the statements made in the attestation clause because she didn’t remember an event almost 50 years earlier, when she was approximately 20 years old.
*433 The dissent relies on Lewis v Lewis (11 NY 220 [1854]) and Matter of Pulvermacher (305 NY 378 [1953]) in support of its contention that the requisite formalities were not followed here. Both Lewis and Pulvermacher are distinguishable on their facts. In Lewis, the proponents sought to probate a will less than two years after it was drafted. Both attesting witnesses in Lewis were deposed. The first testified that the decedent handed him a folded paper and asked him to sign his name and address. This witness did not see the body of the document,[2] and the decedent incorrectly declared it to be his “free will and deed” (Lewis at 222). The other subscribing witness also testified that the document was folded; he did not know what he was signing when he placed his signature on the purported will; and that he did not remember the decedent signing the document in his presence (id. at 222). Upon this record, the Court of Appeals concluded that because the decedent did not sign the document in the presence of the witnesses, the document was folded in such a manner that the witnesses could not see the subscription, and the decedent’s declaration as to a “free will and deed” was incorrect, there was an insufficient basis to satisfy the statutory requirements (id. at 225).
In this case, by contrast to Lewis, almost five decades (not two years) had passed between the purported execution of the will and its presentation for probate. Here, there was only one living witness to be examined, and the Surrogate found that her testimony was insufficient to rebut the presumption of due execution because, she could not “recall the circumstances surrounding execution” of the will. The Court of Appeals’ holding in Lewis was based on entirely different facts and does not require a different result.
Likewise, in Pulvermacher, three years before the testator’s death, he asked a guard and a vault attendant at his bank to witness his signature at the bottom of a folded sheet of paper. Both witnesses were available to testify in the probate proceedings, and they were consistent in their testimony that the decedent did not declare the document to be a will. The deposition testimony indicated that while both signed their names next to the decedent’s signature, neither knew what they were signing, and the document did not have an attestation clause stating that the publication requirement had been complied with. The Court of Appeals denied probate for lack of proper publication.
*434 Here, by contrast to Pulvermacher, there was a five decade time lapse between the execution and attempted probate of the will. There was only one living witness to the will, which was drafted by the decedent’s attorney, who also signed as a witness to the execution, and the will contained an attestation clause.
In the circumstances, given all of the evidence submitted to the Surrogate—the objectant’s delivery of the will, which she found in the decedent’s closet; the invoice from the attorney-drafter, dated the same day the will was purportedly executed, September 12, 1958; the signature of the supervising attorney at the end of the will (authenticated by a handwriting expert); the admission of the attesting witness that she too signed the will and that her address at the time was correctly set forth next to her signature; and the authentication of the decedent and the attorney’s signatures at the end of the will by a handwriting expert—it was not an abuse of the court’s discretion to have granted the proponent’s motion for summary judgment admitting the subject will to probate. Concur—Gonzalez, P.J., Saxe, Acosta and Román, JJ.

. The decree refers to an earlier order which granted petitioners’ motion for summary judgment and denied the cross motion for summary judgment of the objectant.

. See also Matter of Mackay (110 NY 611 [1888]), cited by the dissent. In Mackay, as in Lewis, the attesting witness stated that the decedent handed him a folded piece of paper to sign and that he did not see the decedent’s signature. The court refused to admit the will to probate.