■ In the Matter of the Estate of HARRY RODMAN, Deceased. DAVID GOULD, as Co-Executor of HARRY RODMAN, Deceased, Appellant; ALAN BRONSTEIN et al., Respondents. [984 NYS2d 7]—

Decree, Surrogate's Court, Bronx County (Lee L. Holzman, S.), entered on or about December 28, 2012, which dismissed the petition brought pursuant to SCPA 2103 to set aside the decedent's transfer of his 50% interest in respondent Aurora Gems, Inc. to respondent Alan Bronstein, unanimously affirmed, without costs.

As the court found in favor of petitioner, the appellant, to the extent it determined that the decedent's October 2006 sale of his 50% interest in respondent Aurora Gems to respondent Bronstein was not an inter vivos gift, that ruling is not at issue on appeal. In any event, we note that the court's determination that the sale could not be a gift was based on the fact that, in exchange for the transfer of his interest, decedent received consideration of $10,000, paid by Bronstein, and an interest-bearing promissory note from Aurora Gems for approximately $1.7 million in funds that the decedent had previously loaned

the company (*see Matter of Carr*, 99 AD2d 390, 393 [1st Dept 1984], *appeal dismissed* 62 NY2d 802 [1984]). The decedent had bequeathed his interest in the company to Bronstein in his early wills. Both the decedent's lawyer and accountant testified that, by 2006, they had decided to structure the transfer as a sale, rather than a gift, to minimize the potential tax liability from such a bequest.

The court properly concluded that there was no other basis for setting aside the sale. Petitioner argues that the decedent was unduly influenced into selling his 50% interest for a mere $10,000; the underlying assets of Aurora Gems, consisting primarily of two diamond collections, were valued at approximately $2 million on tax returns and were potentially worth much more. Petitioner is correct that Bronstein was in a fiduciary relationship with the decedent, both being shareholders in a close corporation, and, by 2002, Bronstein was president, sole signatory on the checks, and bookkeeper (*see Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 301 [1st Dept 2003]; *Brunetti v Musallam*, 11 AD3d 280, 281 [1st Dept 2004]). However, the decedent also had long viewed Bronstein as a son. Indeed, the decedent's 1998, 2000, 2001, and 2002 wills bequeathed his interest in Aurora Gems to Bronstein, long before the October 2006 transaction. When the decedent married Bronstein's mother in 2001, Bronstein became the decedent's stepson. Given this close relationship and family connection, notwithstanding the fiduciary relationship, there is no presumption of undue influence (*Matter of Antoinette*, 238 AD2d 762, 764 [3d Dept 1997]; *Matter of Walther*, 6 NY2d 49, 56 [1959]).

Moreover, there is overwhelming evidence of the decedent's sound mental health and capacity to enter the transaction, and no evidence that Bronstein manipulated the transaction. Petitioner cites a potential conflict of interest because the decedent's attorney was also counsel to Aurora Gems at times. However, the decedent had no complaints about his representation. He retained the same attorney to draft subsequent wills and did not attempt to undo the October 2006 transaction. The record also belies petitioner's claims that Bronstein spoke privately with the decedent's attorney about the transaction, since the decedent received all relevant information and correspondence.

To the extent the final promissory note reflects better repayment terms than those in preceding drafts, or those in earlier promissory notes, the testimony establishes that these changes were made at the decedent's, not Bronstein's, instructions. Nothing in the record suggests that petitioner was in any way

unduly influenced or subject to Bronstein's control regarding the transaction (*see Walther*, 6 NY2d at 53-54; *Matter of Ryan*, 34 AD3d 212 [1st Dept 2006], *lv denied* 8 NY3d 804 [2007]).

As there is no evidence that Bronstein engaged in any conduct that influenced the structure of the transaction, petitioner's claims of fraud and overreaching were properly rejected (*see e.g. Ryan*, 34 AD3d at 215; *Stawski v Stawski*, 43 AD3d 776 [1st Dept 2007]).

To the extent petitioner claims that Bronstein breached his fiduciary duty by failing to disclose the true value of Aurora Gems, there is no evidence that Bronstein knew the true value, and no other evidence of any breach of fiduciary duty (*see Rut v Young Adult Inst., Inc.*, 74 AD3d 776 [2d Dept 2010]). In any case, the decedent's attorney advised the decedent to obtain an appraisal, and the decedent declined.

Largely for the above-stated reasons, the court properly concluded that there was insufficient evidence to support a finding that the sale was unconscionable (*see King v Fox*, 7 NY3d 181, 191 [2006]). When viewed in context, particularly the decedent's and Bronstein's long-standing close familial relationship, the transaction, while perhaps extravagant, reflects the decedent's intent and does not seem grossly unreasonable (*see Mandel v Liebman*, 303 NY 88, 93-94 [1951]). Concur—Mazzarelli, J.P., Sweeny, Andrias, Manzanet-Daniels and Kapnick, JJ.