| **Matter of Luther** |
|:---:|
| 2024 NY Slip Op 30277(U) |
| January 19, 2024 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2016-4353 |
| Judge: Hilary Gingold |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------x

Probate Proceeding, Will of

ELIZABETH LUTHER,

Deceased.
-----------------------------------------------------------------------x

G I N G O L D , S .

New York County Surrogate's Court
DATA ENTRY DEPT.

JAN 1 9 2024

DECISION AND ORDER

File No. 2016-4353

The following papers were read in determining this motion:

Papers Numbered

Notice of Motion dated November 16, 2018 – Affirmation
of Ian W. MacLean dated November 16, 2018 –
Memorandum of Law in Support – Affidavit of
William Weaver sworn to June 19, 2018 – Affidavit of
Yalud Andrisani sworn to June 14, 2018 – Affidavit of
Inez Reksten sworn to June 18, 2018 – Affidavit of
Richard G. Schulze sworn to June 14, 2018 – Affirmation of
Corinne M. Avanzino dated November 16, 2018 with
Exhibits 1-11 – Affirmation of Corinne M. Avanzino
dated November 16, 2018 with Exhibits 1-4                         1-9

Affirmation of Michael L. Kenny Jr. dated January 10,
2091 with Exhibits A-P – Objectant's Memorandum of
Law in Opposition – Affidavit of Elizabeth Weaver sworn
to January 10, 2019 – Affidavit of Carla Daichman sworn to
January 9, 2019 with Exhibits A-B                                10-14

Affidavit of Richard G. Schulze sworn to February 25, 2019 –
Affidavit of Curtis Peter Junker sworn to February 25, 2019 –
Affidavit of James Donahue sworn to February 14, 2019 – Reply
Affirmation of Steven Guerra dated February 27, 2019 – Affidavit
of Michael B. Elefante sworn to February 27, 2019               15-20

In this contested probate proceeding in the estate of Elizabeth Luther, proponent Richard

G. Schulze (Schulze), moves for summary judgment pursuant to CPLR 3212, seeking dismissal of

[* 1]

the objections of decedent's daughter, Elizabeth Weaver (Weaver).[1] The objections allege that decedent lacked capacity, that the instrument was not duly executed and was the product of fraud and undue influence perpetrated by Schulze.

Background

Decedent died on October 31, 2016, at the age of 82, survived by Weaver, her only child. Under the propounded instrument, dated September 30, 2013, decedent left her entire estate, with the exception of one item of personality (a silver tea set bequeathed to Weaver) to Old Sturbridge Village (OSV), a non-profit organization located in Sturbridge, Massachusetts. In the propounded instrument, decedent also exercised her power of appointment under three family trusts (Family Trusts) in favor of OSV, thereby leaving the remainder of the substantial trust assets after her death to OSV. Decedent nominated her brother, Schulze, as her executor, and preliminary letters testamentary issued to him on December 6, 2016.

At the time the propounded instrument was executed, decedent was 79 years old and living independently in a rent-controlled apartment on the Upper East Side of Manhattan, where she had lived for 40 years. On March 28, 2013, six months before the propounded instrument was executed, decedent was hospitalized at Gracie Square Hospital after suffering a mental health crisis at her apartment. After approximately two weeks, she was transferred to Mary Manning Walsh Nursing Home for rehabilitation. She was discharged home on April 23, 2013.

On August 9, 2013, decedent called Carlos J. Bianchi, Esq. (Bianchi), the draftsperson of the instrument, whom she had met in 1993 and with whom she consulted with occasionally over the years about her textile business. During this phone call, decedent told Bianchi that she and her brother wanted to meet with him to discuss her will and other documents. According to Bianchi's

---

[1] Objectant Elizabeth Weaver died during the pendency of this motion and Kimberly Dillon, as administrator of her estate, was substituted in this proceeding by stipulation and order dated December 7, 2023.

deposition testimony and contemporaneous notes, decedent specifically told Bianchi during this call that her daughter should be left out of her will. A few days later, on August 13, 2013, decedent and Schulze met with Bianchi at his office and decedent executed a springing power of attorney and durable health care proxy appointing Schulze as decedent's agent on both documents.

On September 19, 2013, less than two weeks before the execution of the propounded instrument, Schulze emailed Bianchi to inform him that decedent could not locate her prior will and that she would in fact need a will drafted. In the email, Schulze writes that decedent would like him to be her executor and that she wishes to leave her estate to OSV. Schulze notes in the email that, since he is chairman of the board at OSV, he must remain at "arms-length on the discussion of [decedent's] will."

Thereafter, on September 26, 2013, decedent met with Bianchi at his office to discuss the preparation of her will. Schulze was not present. Bianchi testified that at this meeting he confirmed with decedent that she did not want to leave any of her assets to her daughter, other than the tea set, and that she wanted leave her estate to OSV. At this meeting, Bianchi did not ask decedent about her affiliation with OSV or why she chose such a charity. In addition, he did not ask her about her assets or her family history.

Four days later, on September 30, 2013, decedent went to Bianchi's office to execute the propounded instrument. Schulze was not present at this meeting. Bianchi discussed the substantive provisions of the instrument with decedent, confirming that she wished to leave her entire estate to OSV (except for the silver tea set) and to exercise her power of appointment over the Family Trusts in favor of OSV. Decedent signed the instrument in front of three witnesses, employees of Bianchi's law firm, each of whom signed an attestation clause and a self-proving affidavit (SCPA § 1406).

3

## Discussion

It is well-established that "[t]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016]). The burden then shifts to the motion's opponent "to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact" (*Sumitomo Mitsui Banking Corp. v Credit Suisse*, 89 AD3d 561, 563 [1st Dept 2011], citing *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable issue of fact, the motion for summary judgment must be denied (*O'Brien v Port Auth. of N.Y. and N.J.*, 29 NY3d 27, 37 [2017], citing *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]).

## Testamentary Capacity

As the movant, Schulze must make a prima facie showing of testamentary capacity, which is measured by whether the testator: (1) understood the nature and consequences of executing a will; (2) knew the nature and extent of his or her property being disposed of; and (3) knew the natural objects of his or her bounty (*Matter of Kumstar*, 66 NY2d 691 [1985]). Here, the affidavits of the witnesses to the propounded instrument, attesting to decedent's sound mind, memory, and understanding, create a presumption of testamentary capacity sufficient to meet proponent's prima facie burden on summary judgment (*Matter of Neuman*, 210 AD3d 492, 493 [1st Dept 2022]). As further proof, the deposition testimony of Bianchi and the attesting witnesses all support a finding of capacity. In addition, the affidavits of decedent's grandson and two personal assistants demonstrate that decedent was aware of her assets and regularly reviewed bank statements from her accounts and trusts.

4

In opposition, Weaver cites to the medical records from decedent's stay at the nursing home six months before the execution of the propounded instrument, as well as an affidavit from decedent's therapist who treated her at that time, indicating that decedent had problems with her memory, cognition and mood. However, Weaver offers no proof of decedent's mental or physical impairment at the time of the execution of the propounded instrument.

Although the medical records indicate that decedent was initially confused and disoriented upon her admission to the nursing home, her cognitive facilities and mood quickly improved and she was released about a week later to her home, where she continued to live independently (*Matter of Schlaeger*, 74 AD3d 405, 406 [1st Dept 2010] [no triable issue of fact bearing on capacity raised by medical records showing that while decedent was terminally ill and initially confused and disoriented upon admission to hospital, his cognitive facilities quickly improved]). Moreover, even if decedent's health was in decline, "old age, physical weakness [or even] senile dementia" does not disqualify an individual from executing a will as long as the testator was acting rationally when she executed the will (*Matter of Hedges*, 100 AD2d 586, 588 [2d Dept 1984]; *see also Matter of Llewellyn,* NYLJ, January 5, 2019, at 19 [Sur Ct, NY County] [dismissing capacity objection even where Article 81 guardian appointed for decedent], *aff'd* 135 AD3d 499 [1st Dept 2016]). Here, all of the contemporaneous evidence at the time the instrument was executed reflects that decedent was capable of making a will (*Schlaeger*, 74 AD3d at 406 [dismissing lack of testamentary capacity where decedent was lucid on the days before and on the date he made the will]).

Weaver also argues that decedent lacked understanding of the nature and extent of her assets and that she did not know the objects of her bounty. In support, Weaver, points to the deposition testimony of Bianchi, who states that he did not ask decedent about her assets or about her family history prior to the instrument's execution. However, a testator need not have "precise

5

knowledge" of her assets but rather an "awareness of . . . the general nature and extent of one's real and personal property" (*Matter of Fish*, 134 AD2d 44, 46 [3d Dept 1987]). Here, Weaver has not submitted any evidence to show that decedent lacked such knowledge and thus has failed to rebut the showing of testamentary capacity. Accordingly, this objection is dismissed.

Due Execution

Proponent has the burden of showing that the propounded instrument was duly executed in accordance with the statutory requirements (EPTL 3-2.1; *Matter of Falk*, 47 AD3d 21, 26 [1st Dept 2007]). Here, Schulze has met this burden by demonstrating that the instrument's execution was supervised by an attorney and is supported by a signed attestation clause and self-proving affidavits (*Matter of Halpern*, 76 AD3d 429, 431 [1st Dept 2010], *aff'd* 16 NY3d 777 [2011]; *Matter of Collins*, 60 NY2d 466, 471 [1983]). The attestation clause serves as prima facie evidence that the instrument was duly executed (*Matter of Collins,* 60 NY2d at 471). In view of proponent's prima facie case as to due execution, objectant can avoid summary dismissal of her objection only if she presents evidence raising a question of material fact as to the bona fides of the will execution. Apart from her claim that decedent lacked capacity, which this court has rejected, Weaver's motion papers are devoid of any evidence as to the invalidity of the execution of the instrument. Accordingly, the objection as to lack of due execution is dismissed.

Undue Influence

As the movant, Schulze has the burden of showing that the propounded instrument was the product of decedent's wishes (*Matter of Llewellyn*, 135 AD3d 499, 500 [1st Dept 2016]; *Matter of Rozof*, 219 AD3d 1428, 1429 [2d Dept 2023]; *Matter of MacGuigan*, NYLJ, April 20, 2015 at 21, col 4 [Sur Ct, NY County], *aff'd* 140 AD3d 625 [1st Dept 2016]). Once this burden is met, objectant must establish evidence of undue influence by showing not only motive and opportunity,

but also the actual exercise of influence so great it amounts to "moral coercion, which restrain[s] independent action and destroy[s] free agency . . . [and which the testator is] unable to refuse or too weak to resist (*Matter of Walther*, 6 NY2d 49, 53 [1959]; *Matter of Aoki*, 99 AD3d 253, 265 [1st Dept 2012]). Since the actual exercise of such influence is difficult to prove, undue influence is usually proven by circumstantial evidence, such as (1) the testator's physical and mental condition; (2) whether the attorney who drafted the instrument was the testator's attorney or was associated with the beneficiary; (3) whether the beneficiary had any direct involvement in the preparation or execution of the instrument; (4) whether the propounded instrument deviates from the testator's prior dispositive plan; (5) whether the person who allegedly wielded undue influence was in a position of trust; and (6) whether the testator was isolated from the natural objects of his affection (*Matter of Roberts*, 34 Misc.3d 1213[A], *8 [Sur Ct, NY County 2011]). While objectant may prove undue influence by circumstantial rather than direct evidence, such evidence must be substantial in nature and conclusory assertions will not suffice (*Matter of Aoki*, 99 AD3d at 265).

Here, Schulze has met his initial burden by submitting a copy of the instrument together with the self-proving affidavits and the testimony of the attesting witnesses, which prove that decedent understood the terms of the will, that the instrument reflected decedent's wishes and that it was not executed under restraint (*Matter of Korn*, 25 AD3d 379, 379 [1st Dept 2006] [self-executing affidavit and testimony of attesting witness and drafting attorney were sufficient to meet proponent's prima facie burden that decedent was free of undue influence]).

In opposition, Weaver asserts that Schulze pressured decedent to make a will while also influencing her decision to insert OSV as the primary beneficiary. Schulze, as chairman of the board of OSV, had the motive to influence decedent's choice of OSV as a beneficiary (*Matter of Schwartzman*, NYLJ, March 27, 2000, at 34, col. 4 [Sur Ct, Westchester County] [proof of

7

financial gain is not a requirement of undue influence]). There is also evidence to show Schulze had the opportunity to influence decedent's decisions. Decedent's medical records from the rehabilitation center and Schulze's April 21, 2013 email to decedent's grandsons show that Schulze was regularly corresponding with decedent and her caregivers at the facility and overseeing her discharge home by, among other things, hiring his housekeeper to help her with her bills and daily activities. Bianchi also testified that Schulze reached out to him while decedent was in the rehabilitation center to ask him to prepare a living will for decedent.

There is also proof that Schulze was involved with the preparation of the instrument and may have influenced decedent's choice of beneficiary. In a September 19, 2013 email to Bianchi, Schulze asks him to prepare a will for decedent as soon as possible and also lays out the terms of the will, including decedent's intent to make Schulze her executor and to leave her estate assets to OSV. Bianchi testified that he first learned of decedent's intention to leave her estate to OSV from this email, thus demonstrating that it was Schulze, not decedent, who first informed Bianchi about decedent's testamentary wishes. A few days later, in an email to Bianchi dated September 26, 2013, Schulze suggested that Bianchi incorporate specific language in the will to support this bequest by referring to decedent's love of OSV. Bianchi included this language in the instrument, which states that decedent's choice of OSV as her primary beneficiary is made "out of [her] love" for the institution. Indeed, Bianchi stated in his deposition that he suspected Schulze of influencing decedent's choice of beneficiary. Taken together, this evidence is indicative of at least some significant degree of involvement by Schulze in the preparation of the propounded instrument (*Matter of Neuman*, NYLJ, April 8, 2022 at 19, col 4 [Sur Ct, NY County]; *Matter of Roberts*, 34 Misc.3d 1213[A], *8 [Sur Ct, NY County 2011]). Under these circumstances, fact issues exist about whether Schulze, who had a personal interest in OSV as chairman of its board, unduly

8

[* 8]

influenced decedent to disinherit her daughter and leave her estate to OSV, precluding summary judgment as to this objection.

Fraud

To raise a material issue of fact, objectant must show, by clear and convincing evidence, that a false statement or promise was made to decedent which caused her to execute a will disposing of her property differently than she would have in the absence of such misrepresentation (*Matter of Ryan*, 34 AD3d 212, 215 [1st Dept 2006]). Proponent makes his prima facie case for summary judgment by demonstrating that there was an absence of any fraudulent statement or misrepresentation by Schulze or anyone else that caused the instrument to be executed. Here, objectant has failed to plead the elements of her claim with particularity as required by CPLR 3016(b). In addition, in her papers in opposition to proponent's motion, objectant failed to address the fraud objection. Therefore, this objection is deemed abandoned and is dismissed.

Finally, movant's request for objectant to pay his legal fees is denied as the objections are not frivolous and were not made in bad faith (SCPA 2302[3][a]).

Accordingly, it is

ORDERED that the motion for summary judgment is granted with respect to the objections based on lack of testamentary capacity, lack of due execution and fraud, and these objections are dismissed; and it is further

ORDERED that the motion for summary judgment is denied with respect to the objection of undue influence; and it is further

ORDERED that the request for legal fees is denied; and it is further

9

[* 9]

ORDERED that the parties shall appear for a pre-trial conference on March 11, 2024 at

11:00 am in person in courtroom 509 at 31 Chambers, New York, New York 10007; and it is

further

ORDERED that all attending counsel must have the authority to settle the matter and be

able to contact their clients during the conference.

Dated: January 19th, 2024

_____
S U R R O G A T E

To:

Ian MacLean, Esq.
The MacLean Law Firm, PC
235 Main Street, Suite 630
White Plains, New York 10601
(212) 682-1555
ianwmaclean@mlfpc.com
*Attorney for Petitioner Richard G. Schulze*

Michael L. Kenny Jr., Esq.
Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 551-2628
mkenny@wiggin.com
*Attorney for Objectant Kimberley Dillon, as
the administrator of the Estate of
Elizabeth Weaver*

David G. Samuels, Esq.
Perlman & Perlman, LLP
521 Fifth Avenue, 30th Floor
New York, New York 10175
(212) 889-0575
david@perlmanandperlman.com
*Attorney for Respondent Old Sturbridge, Inc.*

Deborah Y. McCarthy, Esq.
Assistant Attorney General, Charities Bureau

Office of the Attorney General of the State of New York
28 Liberty Street, 19th Floor
New York, New York 10005
(212) 416-8397
Deborah.Mccarthy@ag.ny.gov
*Attorney for Respondent State of New York*

11